UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEANNA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 22 C 6069 |
| | ) | |
| VILLAGE OF HAZEL CREST and | ) | Judge Charles P. Kocoras |
| VERNARD ALSBERRY, JR., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants Village of Hazel Crest ("Village") and Vernard Alsberry, Jr.'s motion to dismiss Plaintiff Deanna Williams's complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. # 10. For the following reasons, the Court grants-in-part and denies-in-part Defendants' motion.

## STATEMENT

Williams initially filed her complaint on October 6, 2022, in the Circuit Court of Cook County, Illinois. Dkt. # 1. On November 11, 2022, Defendants filed a Notice of Removal, removing the case to federal court. *Id*. Williams brings claims against the Village and Alsberry (the mayor of the Village) for an unconstitutional taking (Count I) and violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(b) (Count II). Defendants move to dismiss the complaint with prejudice for failure to state a claim under Rule 12(b)(6).

The following facts come from the complaint and are assumed true for the purpose of this motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Williams's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Williams is a black woman residing in the Village. At all relevant times, she was the record owner of the property located at 17308 Lowell (the "Property").

Since 2005, the Village has had knowledge that its sewer system is clogged with sewage and tree roots. As a result, the Village began clearing the clogs by jetting sewage into the Property. The following incidents occurred between 2005 and 2016:

- May 2005: The Village jetted three inches of sewer water into the Property.

- May 2012: The Village jetted four inches of sewer water into the Property.

- April 2013: The Village jetted twelve inches of sewer water into the Property.

- April 2015: The Village jetted twelve inches of sewer water into the Property.

- May 2015: A collapsed tile in the sewer system two houses down from the Property caused a flood of sewer water into the Property.

- June 25, 2016: The Village jetted sewer water into the Property.

- December 26, 2016: The Village jetted sewer water into the Property to clear a grease clog.

Each of these incidents caused "massive damage" to Williams's basement. Williams repaired the damage caused by each incident at her own expense.

On January 9, 2017, Williams met with the Village's Director of Public Works, Jeff Hahn, and demanded that the Village stop jetting sewage water into her home.

Hahn promised that the Village would comply with her request and the Village would jet sewage away from the Property in a downstream direction as routine maintenance to prevent future floods.

In the fall of 2019, the Village informed Williams that the downstream jetter was broken. Thereafter, her basement began getting flooded with sewage again. In spring of 2020, Charles Dryer (an agent or employee of the Village) explained that the needed repairs would be made after the COVID-19 pandemic.

On July 27, 2020, the Village jetted over two feet of sewage into the Property's basement. The sewage was so severe that fecal matter was floating atop the sewer water.

On October 28, 2020, Williams filed a claim with the Village's insurance company for the damage to the Property. The Village instructed its insurance carrier to deny that claim, stating that Williams's demand was outside the statute of limitations because she had paid for the damage caused by the prior floods herself.

On May 9, 2021, the Property's basement filled with sewage because the pipes in the sewer system were clogged by tree roots.

In May 2021, the Village offered Williams $4,635.78 to settle all claims for damage to the Property caused by past and future sewage jetting. Williams turned down the offer.

On May 12, 2021, the Village installed a stop flow valve in the Property.

The Village "continued periodically" to jet sewage into the Property "through the date of this filing," i.e., October 6, 2022. The Village has also continued to refuse to repair its sewer system to remove tree roots and sewage blockages, resulting in sewage floods in the Property.

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient

alleged facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Defendants first seek to dismiss Alsberry from the case entirely. They argue that the claims against him in his official capacity as Mayor of the Village are duplicative of the claims against the Village because a "suit naming a municipal officer as a defendant in his official capacity is the equivalent of suing the municipality." Dkt. # 10, at 3–4 (citing cases). They further assert that Williams "has not, and cannot in good faith, make any allegations directed against [Alsberry] which would sustain an individual capacity suit." *Id*. at 4.

Williams does not respond to or address this argument in any way in her response brief. The Court therefore dismisses Alsberry. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [a court] is given plausible reasons for dismissing a complaint, [the court is] not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

Next, Defendants seek to dismiss Williams's claim under the FHA. Defendants raise several issues with this claim that they believe warrant dismissal, including that "post-acquisition" FHA claims are disfavored unless the defendant is somehow responsible for the management of the property, that Williams does not sufficiently allege intentional race discrimination, and that Williams's allegations of damage occurring before October 6, 2020, are barred by the FHA's two-year statute of limitations.

5

Williams brings her FHA claim under Section 3604(b), which states that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).[1] To state an intentional discrimination claim, i.e., "disparate treatment" claim, Williams must plausibly allege that the Village had a discriminatory intent or motive. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Intentional discrimination can be alleged through "either direct or circumstantial evidence." *Daveri Dev. Grp., LLC v. Vill. of Wheeling*, 934 F. Supp. 2d 987, 997 (N.D. Ill. 2013). "Proof of discriminatory motive . . . can in some situations be inferred from the mere fact of differences in treatment." *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 335 n. 15 (1977).

Here, Williams does not sufficiently plead her intentional discrimination claim. *See TBS Grp., LLC v. City of Zion*, 2017 WL 5129008, at *5 (N.D. Ill. 2017). Williams alleges the Village jetted sewage into her home because she's black, that it didn't do so to white families, and that if Williams was white the Village wouldn't have done so to her. But no facts are alleged in support of these wholly conclusory statements. For instance, Williams does not allege any statements or actions by the Village that suggest Williams's race had anything to do with the sewage floods. None of Williams's factual

---

[1] We note that although Williams discusses Section 3617 of the FHA in her response brief, she did not bring a claim under that Section.

allegations indicate anything about the Village's supposed motive, and therefore do not "nudge" her FHA claim "across the line from conceivable to plausible." *See Iqbal*, 556 U.S. at 678; *see also TBS*, 2017 WL 5129008, at *5 ("And, most importantly, the key (and sole) allegation is not even factual, but merely a conclusion. That type of pleading 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'") (citation omitted).

Even if Williams's intentional discrimination allegations were enough, she has failed to sufficiently rebut Defendants' argument that her claim still fails under Section 3604. Defendants first argue that the FHA does not apply to "post-acquisition" claims, i.e., claims arising from alleged conduct after an individual occupies their home, although they acknowledge Section 3604 may apply in cases of constructive eviction. They also assert Williams's allegations fail for "not involv[ing] a homeowner's association responsible for controlling [Williams's] access to her home." *Id*.

In response, Williams cites *Bloch v. Frischholz*, which the Court agrees allows for post-acquisition claims under Section 3604: "Sections 3604(a) and (b) prohibit discriminatory evictions. Eviction, actual or constructive, can only occur *after* the sale or rental is complete. Therefore, 'interference' with certain rights protected by [Section] 3604—rights that prohibit discriminatory evictions—may also occur post-acquisition." 587 F.3d 771, 782 (7th Cir. 2009) (emphasis in original). But whether Williams's claim sufficiently alleges such an eviction is a different question.

7

The *Bloch* court states: "[Section] 3604 requires that the plaintiffs' dwelling be made truly unavailable, or that defendants deprived plaintiffs of their privilege to inhabit their dwelling." *Id*. The court also notes that a plaintiff alleging constructive eviction "must show her residence is 'unfit for occupancy,' often to the point that she is 'compelled to leave.'" *Id*. at 777 (citation omitted). Furthermore, "[p]laintiffs must show more than a mere diminution in property values, more than just that their properties would be less desirable to a certain group . . . . Availability, not simply habitability, is the right that [Section] 3604(a) protects." *Id*. (internal citations omitted); *see id*. at 779 (applying same analysis to Section 3604(b)). Williams's complaint does not contain any allegations regarding constructive eviction or the unavailability of her home. All that Williams alleges is that the floods caused damage, which she repaired. This says nothing about Williams's ability to occupy the Property. Furthermore, Williams in no way responds to Defendants' point that the Village is a municipality which merely provides services to the Property, rather than an entity like a homeowner's association with some degree of control over Williams's home. For the foregoing reasons, the FHA claim is dismissed without prejudice.[2]

---

[2] The statute of limitations does not bar Williams's claim at this time. Williams alleges a series of connected events stretching back to 2005, thus implicating the continuing violation doctrine. If Williams is able to successfully replead her FHA claim in an amended complaint, and if, after discovery, Defendants have reason to believe the allegations taking place before the statutory cutoff are barred by the statute of limitations, they may revisit the issue. *See McDonough v. City of Chi.*, 2008 U.S. Dist. LEXIS 44706, at *9–10 (N.D. Ill. 2008).

Defendants also move to dismiss William's unconstitutional taking claim, which consists of three sentences: (1) "The Village [] has seized [the Property] for the purpose of use as a sewage dump, and continues to do so on a regular basis."; (2) "The Village has willfully failed and refused to provide just compensation for the use of [the Property] as a sewage dump or the damage to [the Property]."; and (3) "[Williams] is entitled to the fair market value of her home as compensation." Dkt. # 1, ¶¶ 40–42.

The Takings Clause of the Fifth Amendment[3] cautions that "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V. This clause is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Arkansas Game & Fish Comm'n v. U.S.*, 568 U.S. 23, 31, (2012). The Supreme Court acknowledges that certain government actions are always a taking, such as the "permanent physical occupation of property" and the implementation of "a regulation that permanently requires a property owner to sacrifice all economically beneficial uses of his or her land." *Id*. But "most takings claims turn on situation-specific factual inquiries." *Id*. at 31–32.

Defendants argue that Williams has not sufficiently stated a claim for unconstitutional taking for three reasons, all of which we reject: (1) Williams does not allege specific instances of damage to her home since the Village installed the stop flow

---

[3] We presume that Williams is asserting her claim under the U.S. Constitution, and not Illinois. If she files an amended complaint, she should so clarify.

9

valve; (2) Williams does not allege she has been deprived of the use of her property or that it has been rendered unfit for its intended use; and (3) Williams's allegations do not establish that the Village permanently appropriated her property for its own use. Dkt. # 10, at 8. We reject the first point because Defendants cite no case law for this proposition. *See Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) ("[P]erfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.").[4] Defendants also cite no authority for their second purported basis. As to the last point, the Supreme Court has stated that "[b]ecause government-induced flooding can constitute a taking of property, and because a taking need not be permanent to be compensable, our precedent indicates that government-induced flooding of limited duration may be compensable." *Arkansas*, 568 U.S. at 34.[5] We therefore deny Defendants' motion as to the taking claim.

Finally, we deny Defendants' request to strike certain paragraphs of the complaint. They argue that "paragraphs 26, 27, and 31 reference inadmissible information and should be stricken" under Federal Rules of Evidence 408 and 411. But those are "evidentiary rule[s], which [are] best addressed in [the] context of admissibility of evidence at trial" and thus striking those paragraphs would be

---

[4] Williams, in her response brief, discusses an additional flooding event that occurred on December 15, 2022, which she should include if she files an amended complaint, in addition to adding as much specificity as possible to her other general allegations of "continued" flooding.

[5] We do, however, note that the Complaint contains no allegations of how much it cost to repair the damage to the Property, or why the Village's offer of $4,635.78 was not "just." Williams should include such allegations in her amended complaint.

premature. *See PTR, Inc. v. Forsythe Racing, Inc*., 2009 WL 1606970, at *3–4 (N.D. Ill. 2009); *see also Button v. Sheahan*, 2001 WL 111028, at *4 (N.D. Ill. 2001).

## CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part Defendants' motion to dismiss [10]. The complaint is dismissed with prejudice as to Defendant Alsberry. Count I is dismissed without prejudice. The motion is denied as to Count II. Defendants' request to strike certain paragraphs of the complaint is denied. Williams may file an amended complaint by 7/13/2023. Motion for Order [15] is denied as moot. It is so ordered.

Dated: 6/13/2023

_____
Charles P. Kocoras
United States District Judge